CLARA R. HUFFMAN, Plaintiff in Error, *vs.* JAMES EDWARD GRAVES *et al.* Defendants in Error.

*Opinion filed June 29, 1910.*

1. WILLS—*a bill to contest will should allege all grounds relied upon.* Upon a bill in chancery to set aside the probate of a will the *prima facie* case made in favor of the will by the certificate of the oath of the attesting witnesses can be impeached only upon the particular grounds alleged in the bill and not upon grounds not alleged, even though they may appear from the evidence.

2. SAME—*when question of proper attestation of will is not involved.* The question whether a will was legally executed and attested is not involved in a proceeding to set aside the probate of the will, where the only grounds alleged in the bill are want of testamentary capacity and that there was undue influence.

3. SAME—*when question of fiduciary relation is immaterial.* If the evidence in a will contest case clearly shows that the instrument was the product of the mind and will of the testatrix and not that of the person who drew the will, the question whether such person sustained a fiduciary relation to the testatrix is immaterial.

4. SAME—*mere relationship of a child to parent raises no presumption of undue influence.* No presumption that a will made by a parent in favor of a child was procured by the child's undue influence arises from the mere fact of their relationship, in the absence of evidence that a confidence was, in fact, reposed in the child; nor do the mere facts that the child procured the attendance of the attesting witnesses and had a disagreement with another child over the matter raise any such presumption.

5. INSTRUCTIONS—*argumentative matter should be stricken out.*
A preliminary statement in an instruction in a will case, to the
effect that the law recognizes that wills are often made *in extremis*
and when the bodily powers are broken and mental faculties are
enfeebled, is merely argumentative and should be stricken out.

6. SAME—*what statement in instruction is incorrect.* A state-
ment that the reasonableness, justice or propriety of a will are not
questions for the jury to take into consideration or pass upon is
not a correct statement of the law, and should be either modified
or stricken out of an instruction which was intended to inform the
jury that the will could not, for those causes alone, be set aside.

7. EVIDENCE—*whether evidence of conversations with testatrix
is too remote rests largely with the court.* Whether conversations
with the testatrix, prior to the making of the will, with reference
to the disposition of her property are too remote in point of time to
be admissible is a question which cannot be determined by any fixed
rule but must rest somewhat within the discretion of the court.

WRIT OF ERROR to the Circuit Court of Cass county;
the Hon. HARRY HIGBEE, Judge, presiding.

MASTERS & MASTERS, for plaintiff in error.

CHARLES Æ. MARTIN, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiff in error filed a bill in chancery to contest
the validity of the will of her mother, Rachel M. Graves,
and to set aside the probate thereof. The trial resulted in
a verdict sustaining the validity of the will and a decree
dismissing the bill, to reverse which the complainant prose-
cutes a writ of error.

It is first contended that the evidence fails to show a
legal execution and attestation of the alleged will. The
answer to this contention is, that no such objection to the
validity of the will was stated in the bill. On the contrary,
the bill alleges that Rachel M. Graves executed a certain
instrument of writing purporting to be her last will and
testament, which was after her death admitted to probate.

The certificate of the oath of the attesting witnesses at the time of the probate of the' will was admitted in evidence and established *prima facie* that the will was signed and attested as required by the statute. When a bill in chancery is filed for the purpose of setting aside the probate of a will, the *prima facie* case made in favor of the validity of the will can be impeached only upon the particular grounds alleged in the bill. (*Flinn* v. *Owen,* 58 Ill. 111; *Purdy* v. *Hall,* 134 id. 298; *Swearingen* v. *Inman,* 198 id. 255; *Waters* v. *Waters,* 222 id. 26.) The only grounds of objection to the validity of the will, alleged in the bill, were the mental unsoundness and incapacity of the testatrix and the undue influence exerted upon her by the defendants and Dr. John F. Snyder.

It is next contended that the verdict is against the manifest weight of the evidence. The testatrix was about seventy years old at the time of her death. She had been twice married. The complainant was the child of the first marriage and was at the time of her mother's death about forty or forty-five years of age. The defendants were James M. Graves, the second husband, who has died since the decree below, and James Edward Graves and Addie Graves, the children of the second marriage, who were about thirty-four and twenty-six years old, respectively, at their mother's death. Mrs. Graves owned a farm of eighty acres and some lots in the city of Virginia, where she lived together with her husband and children, all of whom were unmarried. Complainant owned forty acres which adjoined her mother's farm. The will devised twenty acres adjoining the complainant's forty acres to complainant for life, subject to a life estate to James M. Graves, and devised the remainder in the twenty acres and the residue of the real estate, subject to a life estate to James M. Graves, and all the personal property, to James Edward Graves and Addie Graves. The testatrix died February 10, 1908, and the will was executed January 3, 1908. It was written by

Dr. Snyder about a year before its execution, at the request of the testatrix, after a conversation with him on that subject and from a memorandum prepared by her. The date and name of the executor were left blank but were filled in when it was executed. Dr. Snyder read the will over to the testatrix, who said it was all right. It was then delivered to her, and she retained it, unexecuted, for about a year. Dr. Snyder had been the physician of the testatrix for many years and was a friend of long standing. About two years before her death the testatrix had an operation performed for the removal of an enlargement of the right breast, which was probably of a cancerous nature, and her health thereafter declined, but she was not confined to the house until the latter part of December, 1907. The evidence shows not the slightest reason to suspect any mental incapacity of the testatrix prior to the illness which began a few days before the execution of the will. If she was incapacitated at the time of its execution, her mental inability was due only to the great reduction of her physical powers caused by her illness. She was very seriously ill, greatly reduced in strength, very feeble, yet she lived more than five weeks afterward. Aside from the members of the family, there were present at the execution of the will Elijah Needham and George L. Bailey, the attesting witnesses, and Dr. Snyder. Bailey afterward entered the United States naval service and did not testify at the trial, though the certificate of his testimony at the time of the probate was read. Needham and Dr. Snyder both testified to what occurred on that occasion, to the physical and mental condition of the testatrix, and that she was of sound mind. Dr. Lyles, the attending physician, who visited her daily, testified that her mind was all right at that time. A. J. McClure was in the room shortly before the execution of the will and testified that in his opinion her mind was all right. On the other hand, Mrs. Kinney, a sister of the testatrix, was also there shortly before the execution of

the will and testified that she did not think her sister was of sound mind. She also testified to acts and words of Dr. Snyder there which would tend to affect his credibility, which were denied by him. Mrs. Nellie Dyer, a niece of the testatrix, testified that a day or two after the supposed will was made her aunt told her there was something going on she did not understand,—that they had a will and she did not know anything about it. According to the testimony of Mrs. Kinney, the complainant, on the evening the will was executed, objected to its being executed, not, however, on the ground that her mother was not competent to make a will, but because the will was unjust to her. The conflict in the evidence was to be determined by the jury, and we are satisfied that the verdict is in accordance with the weight of the evidence.

So far as the question of undue influence is concerned, there is no evidence of such influence. The testimony of Mrs. Kinney as to the statements of Dr. Snyder do not tend to prove the issue, for they do not refer to any act done or words spoken by him having a tendency to procure the execution of the will. They merely refer to his intentions and feelings in the matter. So far as the evidence shows, no suggestion was ever made by any of the defendants or Dr. Snyder, to the testatrix, as to the making of this will or any will. On the contrary, the evidence in the record is that the will was drawn pursuant to a memorandum prepared by the testatrix herself and only after her repeated requests to Dr. Snyder to write it. If she was solicited by anyone to make the will the evidence of it is not in this record. In this connection we do not think the strictures of counsel upon the conduct and testimony of Dr. Snyder are justified by the record, and the statement in their brief that no sane mind can read this record and believe a thing he testified to is wholly unwarranted. Whether or not he sustained a fiduciary relation to the testatrix is immaterial, for the evidence shows that the in-

strument was the product of her will and not his. It is argued from the fact that James Edward Graves procured the attesting witnesses to be present, and from the fact that he had a violent disagreement with the complainant at the time as to the execution of the will by their mother, that the will was executed through his influence. No such inference can be drawn from such circumstances. No presumption that a will made by a parent in favor of a child was procured by the child's undue influence arises from the relation, in the absence of evidence that a confidence was, in fact, reposed in the child.

Objection is made to the giving of instruction No. 14. That instruction was upon the subject of the execution of the will and what constitutes a sufficient signing. As we have held that the execution of the will was not in issue the instruction should not have been given, but it was not harmful to the plaintiff in error.

Instruction No. 18 stated that the burden of proof of undue influence was upon the complainant. The objection is made to it that it ignores the fiduciary relation between the testatrix and James Edward Graves and Dr. Snyder, by virtue of which the burden was cast upon the defendants of showing that the will was the result of the exercise of the testator's judgment and not of an imposition or wrong practiced by them. Since we have held that no confidential relation was shown, the objection to the instruction fails.

The same objection is made to instruction No. 19, and the additional objection that it requires the jury, unless they "find, from all the evidence, that this charge" (of undue influence) is true, to find for the proponents on this issue. It is said that this is tantamount to saying that the jury must be convinced or satisfied that the charge is true, and that this is a greater degree of proof than the law requires. We do not agree with this view. To require the jury to find, from the evidence, that the charge is true is not dif-

ferent from requiring them to find from the preponderance of all the evidence.

Instruction No. 9 was as follows:

"That the owner of property who has the capacity to attend to his ordinary business has the lawful right to dispose of it either by a deed or will, as he may choose, and that it requires no greater mental capacity to make a valid will than to make a valid deed, and that if such an owner who is free from improper restraint chooses to disinherit his heir he has a legal right to do so, and such disposition of his property is valid, whether it be reasonable or unreasonable, just or unjust, and that the reasonableness or justice or propriety of the will are not questions for the jury to take into consideration or pass upon."

The objection is to the last clause of the instruction, which tells the jury that the reasonableness, justice or propriety of the will are not questions for the jury to take into consideration or pass upon. It was intended by this instruction to inform the jury that they could not, for the reasons mentioned in the last clause, set aside the will. By the fifth instruction given for the complainant the jury were told that they might consider these very circumstances, in connection with other circumstances and evidence in the case, in determining the question of mental capacity and undue influence. The last clause should have been eliminated from this instruction or qualified.

Instruction No. 11 was as follows:

"The law, recognizing that wills are often made *in extremis,* when the bodily powers are broken and mental faculties are enfeebled, only requires that the testatrix shall retain so much of her mental power as will enable her to understand her relations to those who would be the natural objects of her bounty, and the property she wishes to distribute and the manner in which she intends to distribute it, the nature of the business in which she is engaged and its effect upon the natural objects of her bounty; and if

she does retain so much mental power at the time of executing a will, it is immaterial that she may at such time have less command of her mental faculties than when in good health."

The objection made is to the preliminary statement that the law recognizes that wills are often made *in extremis* and when the bodily powers are broken and mental faculties are enfeebled. This is not the statement of any rule of law applicable to the case. It is argumentative and should have been stricken out.

The court refused to give instructions 13, 14, 15, 17 and 18 asked by the complainant. Instructions 13 and 15 stated abstract propositions of law as to the comparative ability required to transact ordinary business and to make a will. The question of mental capacity required to make a will was sufficiently covered by instructions given. Instruction 14 called the jury's attention specially to certain declarations of the testatrix made after the will and was bad for that reason. It should have applied to all declarations. Instructions 17 and 18 are on questions of undue influence and fiduciary relations, which we have held do not arise in the case.

A witness, Appie Graves, was permitted to testify to a conversation with the testatrix about the disposition of her property before the making of the will. It is claimed that this conversation was too remote in time to be competent. There can be no absolutely fixed rule as to the question how far back such conversations may be received. It must rest somewhat within the discretion of the court. If any error was committed in this respect we do not consider it of sufficient importance to require a reversal of the decree, nor do we think the decree should be reversed for the errors in instructions which have been mentioned.

The decree will be affirmed.  *Decree affirmed.*