CARRIE E. WILKINSON, Plaintiff in Error, *vs*. MARY J.
SERVICE *et al*. Defendants in Error.

*Opinion filed February 25, 1911.*

1. WILLS—*contestant must overcome prima facie case in favor
of validity of will.* The testimony of the subscribing witnesses as
to the sanity of the testator is sufficient to make out a *prima facie*
case in support of the validity of the will, and the contestant is
then required to show the contrary.

2. SAME—*the usual test in determining capacity to make a will.*
The usual test of the capacity of a person to make a will is whether
he is capable of understanding the effect and consequences of his
act at the time the will is executed, and the evidence must clearly
preponderate to the contrary to justify setting aside the will.

3. SAME—*what tends to weaken testimony that testator was of
unsound mind.* Testimony that the testator was of unsound mind
is weakened by the fact that the witnesses employed him as their
physician after they had observed the actions on which they based
their opinions, and in the case of two witnesses, both divorced
wives of the testator, that they married him notwithstanding the
actions they observed.

4. SAME—*when conversations between the testator and attorney
are not privileged.* In a proceeding by a daughter to contest her
father's will, conversations between the testator and his attorney
with reference to drawing the will and testator's attitude toward
his daughter are not incompetent, as privileged communications.

5. SAME—*declarations of a testator are competent to prove his
state of mind.* The declarations of a testator are competent, in a
proceeding to contest his will, to show the state of his mind but
not to prove the facts stated.

6. SAME—*what admissible as tending to show testator's state of
mind.* A declaration by the testator that he had received a letter
from his daughter's husband forbidding him to communicate with
her for reasons given, which letter is also introduced in evidence,
is, when taken in connection with the facts that he had previously
made two other wills substantially disinheriting the daughter, and
had given her mother, the testator's divorced wife, a considerable
sum of money, admissible to show his attitude toward the daughter
and his reason for making the will as he did.

7. SAME—*certified transcript of record in probate court cannot
be contradicted by parol.* In a proceeding to contest a will the
certified transcript of the evidence of the subscribing witnesses in
the probate court cannot be contradicted by testimony to the effect

that the statement in the record that the evidence of the subscribing witnesses was heard in open court was untrue.

8. SAME—*fact of suicide is not evidence, per se, of insanity.* The fact that the testator committed suicide the day after he made his will cannot be regarded as proof, *per se,* of insanity, but it is only a fact to be considered with the other facts in the case in determining that question.

9. INSTRUCTIONS—*one who fails to ask for particular instruction cannot complain that it was not given.* One who fails to ask for an instruction upon some particular view of the case cannot complain that no such instruction was given, even though it would have been proper to have given it.

10. SAME—*fact that testator committed suicide need not be referred to in each instruction.* The fact that the testator committed suicide the day after he executed his will does not require that each instruction in a proceeding to contest the will shall refer to that fact.

11. APPEALS AND ERRORS—*party cannot complain of self-imposed injury.* Alleged injury from the want of the testimony of a certain witness must be regarded as self-imposed and not subject to complaint in a court of review where the objection, which was made to the competency of the witness, was withdrawn while he was in the court room and no reason is shown why his testimony could not have been thereafter given.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding.

A. D. GASH, for plaintiff in error.

CHURCH & MCMURDY, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error, Carrie E. Wilkinson, filed her bill in the superior court of Cook county to set aside the will of her father, Charles D. Hews, on the ground that he was not of sound mind and memory when it was executed. A trial before a jury resulted in a verdict that the writing was the last will and testament of the testator, made while he was of sound mind and memory. A decree to that effect was thereafter entered and the bill dismissed for want of equity. From that decree this writ of error is sued out.

Charles D. Hews was a physician and resided and practiced in Chicago for many years. The plaintiff in error was his daughter and only child. At the time of the trial she had been married for some years and resided in St. Paul. By his will, dated March 23, 1909, Hews gave his small amount of household furniture and surgical and medical material to Dr. James W. Kelly, an intimate personal friend, and the remainder of his property, substantially all real estate, estimated by different witnesses to be worth from $8000 to $12,000, to his sister, Mary J. Service, one of the defendants in error. The plaintiff in error received nothing under the will.

The only issue presented to the jury was whether or not Hews was of sound mind and memory at the time he executed the will. For many years previous he had been addicted to the use of intoxicating liquor, frequently remaining under its influence for several days at a time. During such times he spent money very freely and attracted attention by his unusual actions. There was also evidence tending to show that he took morphine or some other drug. He had been married and divorced four times,—twice with the same woman. Two of his divorced wives testified, one of them being the mother of the plaintiff in error. The latter wife testified she thought he was of unsound mind. The other testified that, among other things, in 1896 or 1897 he told her the spirits bothered him at night. Many of the queer actions that were testified to occurred several years before the will was executed. The weight to be given certain testimony of the witnesses who stated that they did not think the testator was of sound mind is lessened by their actions toward him during his lifetime. Several of these witnesses testified that notwithstanding his acts which they thought so strange they thereafter called him as a physician to treat themselves or members of their families. Both of the divorced wives who were witnesses admitted that many of the actions of the testator which they thought indicated

his unsoundness of mind occurred before they married him. There is testimony tending to show that testator drank less the last year or two of his life than before. The year before his death he was indicted for abortion. This charge worried him greatly. Just previous to the execution of the will his attorney succeeded in getting this indictment disposed of without a trial. During this trouble, or a little before, he had transferred his property to a sister as a precaution, and she and her husband mortgaged it. He found out about the mortgage just previous to the making of the will and was much annoyed by it. The property was afterward re-transferred to him. He called up his attorney the night before the will was made and was told the attorney could not come that night on account of other work. Counsel for plaintiff in error contends that the attorney refused to go because he thought testator was under the influence of liquor. This, we think, is not borne out by the record. The testimony shows that the occasion when the lawyer did not go to draw the will on a particular night because the testator was under the influence of liquor concerned a will the attorney had drawn for the testator several years previous. The evening he drew the will the attorney, S. L. Lowenthal, talked with the testator about how he wished it drawn. He had previously sent for Dr. Kelly to act as a witness, but when it was found testator wished to give Dr. Kelly some personal property Lowenthal decided he himself would be one of the witnesses, and sent for an undertaker, Wyngaarden, who was a near neighbor and friend of the doctor, to be the other witness. Testator seemed blue and despondent that evening, and told the undertaker, after the will had been executed and the others had left, that he had money enough in the safe to bury him. Wyngaarden told him to cheer up and use the money to go to a hospital for treatment, then to sell his real estate and use the money to take life easier. The next morning, about nine o'clock, testator sent the girl who attended to his office

to the undertaker with a request to come at once. While the girl was gone on this errand the doctor shot himself.

Both of the subscribing witnesses to the will testified that the testator was in his right mind at the time of the execution of the will. Several physicians who had been acquainted with him for years quite intimately testified to the same effect. The testimony tends to show that most, if not all, of his actions out of the ordinary which were testified to, occurred when he was under the influence of liquor. The witnesses who testified as to his being sane during the last years of his life were greater in number and had fully as favorable opportunities for judging of his mental condition as did those who testified that they thought him mentally unsound. Most of the witnesses who testified that his mental condition was not normal had comparatively little to do with him during the last few years of his life. The usual test of the capacity of a testator to make a will is whether he is capable of understanding the effect and consequences of his act at the time the will is executed. The evidence must clearly preponderate to authorize the setting aside of a will. (*Entwistle* v. *Meikle,* 180 Ill. 9; *Drum* v. *Capps,* 240 id. 524.) The testimony of the subscribing witnesses as to the sanity of the testator was sufficient to make out a *prima facie* case in support of the validity of the will. The burden of proof was then upon plaintiff in error to show the contrary. (*Baker* v. *Baker,* 202 Ill. 595; *Waters* v. *Waters,* 222 id. 26.) The verdict of the jury, in our judgment, is supported by the weight of the evidence.

Plaintiff in error contends that a portion of the testimony of attorney Lowenthal with reference to his conversations with testator as to drafting the will and testator's attitude toward his daughter was incompetent, as the conversations were privileged communications between himself and the testator while the relation of attorney and client existed between them. While such communications might be privileged if offered by third persons to establish claims

against the estate, when the contest is between the heirs or next of kin of the testator the rule is otherwise. *Scott* v. *Harris,* 113 Ill. 447; *Glover* v. *Patten,* 165 U. S. 394; 1 Wharton on Evidence, sec. 591; *Doherty* v. *O'Callaghan,* 17 L. R. A. (Mass.) 188, and note.

It is further insisted that portions of the evidence of this witness as to conversations with testator were inadmissible on the ground that they were hearsay, especially the statement of the testator that plaintiff in error's husband had written a letter in which he had directed the doctor not to communicate with the daughter in any way, the letter further stating that the testator had never treated his daughter right, and that when she wanted his assistance he was spending his money on whisky and fast women. The letter was also introduced in evidence. The rule is well established in this State that the declarations of the testator are competent, in a contest involving the validity of his will, to show the state of his mind but not to prove the facts stated. (*Reynolds* v. *Adams,* 90 Ill. 134; *Hill* v. *Bahrns,* 158 id. 314; *Taylor* v. *Pegram,* 151 id. 106; *Kaenders* v. *Montague,* 180 id. 300; *Baker* v. *Baker, supra.*) Whatever is material to prove the state of a person's mind or what is passing in it, and what were his intentions, may be shown by his declarations and statements. The truth or falsity of such statements is of no consequence. They are to be used only as showing the condition of his mind. Declarations, prior to the execution of the will, that certain of the testator's children were wanting in natural affection are properly considered as showing his state of mind. (*Waterman* v. *Whitney,* 11 N. Y. App. 157; *Shailer* v. *Bumstead,* 99 Mass. 112; *Stephenson* v. *Stephenson,* 62 Iowa, 163; *Thompson* v. *Updegraff,* 3 W. Va. 629; *Zibble* v. *Zibble,* 131 Mich. 655; 3 Wigmore on Evidence, sec. 1734, and cases cited.) The testimony as to the doctor's feeling towards his daughter, and the causes for it, was properly admitted to show the condition of his mind at the time the

will was executed. This evidence, taken in connection with the fact that he had several years before drawn two other wills, one giving his daughter $50 and the other $5, and also in connection with other declarations that he had given his divorced wife (the plaintiff in error's mother) quite an amount of property which she could give to plaintiff in error, was properly admitted as tending to show his reasons for disposing of his property as he did, under the will here in question.

It is further contended that the court erred in refusing to allow one Isaac Smith to testify because he was surety on the bond for costs in this case. The record shows that the objection to the testimony of this witness was withdrawn while he was still in the court room, and there is nothing here to show that his testimony could not have been thereafter introduced. Even if his testimony were competent,—which we do not decide,—if injury resulted to plaintiff in error for want of such evidence it was self-imposed and she cannot now complain. *Wabash, St. Louis and Pacific Railway Co.* v. *McDougall,* 126 Ill. 111.

The further contention is made that the instructions were erroneous because all of them, save one, neglected to refer to the fact that testator committed suicide within a very short time after the execution of the will. The act of self-destruction cannot judicially be regarded as proof, *per se,* of insanity. It is but a fact to be considered, with all the other facts in the case, in determining the testamentary capacity of the testator. (*McElwee* v. *Ferguson,* 43 Md. 479; *In re Bey,* 46 La. Ann. 773; 1 Jarman on Wills,—Rand. & Tal. 5th Am. ed.—p. 112, note *a,* and cases cited.) Plaintiff in error did not ask an instruction presenting her view of the law on this subject. A party can not assign error on a failure of the court to give a proper instruction when he has failed to request such an instruction. (*Drury* v. *Connell,* 177 Ill. 43.) We do not think the jury were misled by the instructions as to this question.

It was not necessary for each instruction to refer to the suicide of testator.

The further contention is made that under the ruling of this court in the recent case of *Huffman* v. *Graves,* 245 Ill. 440, one of the instructions was erroneous in stating that if the jury believed, from the evidence, that the testator was of sound mind and memory then they should find he had testamentary capacity, even though they thought the disposition made by him of his property was unfair to plaintiff in error. The instruction in this case is clearly distinguishable in its wording from the one criticised in *Huffman* v. *Graves, supra.* While the instruction was not as clearly worded as it might be, instructions worded substantially the same as this one were upheld in *Taylor* v. *Pegram, supra,* and *Hollenbeck* v. *Cook,* 180 Ill. 65. Furthermore, an instruction which stated the law as contended for by plaintiff in error immediately followed the instruction here criticised. All the instructions should be construed together as a series. (*Crowell* v. *People,* 190 Ill. 508; *Peterson* v. *Pusey,* 237 id. 204; *Helbig* v. *Citizens' Ins. Co.* 234 id. 251; *Lourance* v. *Goodwin,* 170 id. 390.) Considering all the circumstances, the jury were not misled by this instruction.

It is further contended that the certified transcript of the evidence of the subscribing witnesses in the probate court was improperly admitted on the trial of the case. It is sufficient answer to this contention to state that no exception was preserved in the record as to the admission of this testimony. It may be added, however, that the certified transcript of this evidence appears to be similar, in every respect, to that held by this court in *Baker* v. *Baker, supra,* as competent to be introduced in a will contest. After this transcript was admitted it was attempted to be shown that the statement therein contained that the evidence of the subscribing witnesses was heard in open court before Hon. Charles S. Cutting, probate judge, was not true and that the evidence was not, in fact, heard before

him, but the trial court, on objection, refused to allow
parol testimony to contradict the transcript. Plaintiff in
error was represented by counsel on the taking of this tes-
timony in the probate court. If it was not taken in open
court, as she now contends the law requires, it was her duty
then to object. In this collateral proceeding the record of
the probate court showing that the evidence was taken in
the presence of the judge cannot be contradicted. *King* v.
*Justices,* 1 M. & S. 442; *Penny* v. *State,* 7 Scott, (C. P. &
E. C.) 285.

We find no reversible error in the record. The decree
of the superior court will therefore be affirmed.

*Decree affirmed.*