2026 IL App (2d) 240506-U
Nos. 2-24-0506, 2-24-0510, 2-24-0615, 2-24-0617 cons.
Order filed February 6, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | |
|---|---|
| *In re* ESTATE OF THOMAS A. BUTTS, Deceased | ) Appeal from the Circuit Court<br>) of Kane County.<br>)<br>) Nos. 21-MR-1476<br>)     21-P-383<br>) |
| (Rose Ellen May, Plaintiff-Appellee v. Allen Butts and Steven Butts, Defendants-Appellants). | ) Honorable<br>) Joseph M. Grady,<br>) Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The trial court's finding that decedent's will was invalid was immaterial to issues raised in plaintiff's complaint and therefore did not impact jurisdiction of the trial court; (2) the trial court's finding that plaintiff proved by clear and convincing evidence the existence of an oral contract to make a will pursuant to which decedent would leave assets to plaintiff was not against the manifest weight of the evidence; (3) the trial court did not err in striking defendants' first affirmative defense and dismissing a corresponding counterclaim, which were based on section 4-6(a) of the Probate Act of 1975 (755 ILCS 5/4-6(a) (West 2020)); but (4) the trial court erred in striking defendants' second affirmative defense and dismissing a corresponding counterclaim, which were based on the Third Party Beneficiary Contract Act (755 ILCS 30/0.01 *et seq.* (West 2020)).

¶ 2                          I. INTRODUCTION

¶ 3     These consolidated appeals arise out of a dispute as to the distribution of the assets of decedent, Thomas A. Butts. At the time of his death, decedent had been in a long-term, non-marital relationship with plaintiff, Rose Ellen May. In addition, decedent was survived by his father, defendant Allen Butts (Allen), and his brothers, Michael Butts (Michael) and defendant Steven Butts (Steven).[1]

¶ 4     Following decedent's death, Allen opened a probate case in the circuit court of Kane County. Plaintiff subsequently filed a two-count complaint for declaratory judgment and other relief in the same court, which she later amended. At issue in both the probate case and the declaratory judgment action are a written document captioned as the "Last Will and Testament of Thomas A. Butts" and a purported oral contract to make a will between plaintiff and decedent. Plaintiff alleged that, pursuant to her oral contract with decedent, he agreed to leave her his assets upon his death and to disinherit his brothers. Decedent's assets included certain investment and retirement accounts (referred to as the "Edward Jones accounts"), of which decedent had named Allen as the sole surviving transfer-on-death beneficiary. Defendants filed two affirmative defenses to plaintiff's complaint and Allen also filed a counterclaim. On plaintiff's motion, the trial court struck the affirmative defenses and dismissed the counterclaim with prejudice pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)). During the hearing on the motion to strike and dismiss, the trial court indicated that the written document submitted as decedent's will is invalid.

---

[1]Michael died on January 14, 2023, during the pendency of this case. Allen passed away on October 15, 2025, during the pendency of this appeal. Following Allen's death, Steven was substituted as special representative of Allen, individually and as administrator of decedent's estate.

¶ 5 Following a bench trial in the probate case and the declaratory judgment action, the trial court determined that decedent had entered into an agreement with plaintiff to leave all his assets to her. As such, the court entered an order awarding plaintiff the assets of decedent's estate and imposing a constructive trust for her benefit on the probate assets as well as the Edward Jones accounts. Defendants appeal, arguing that (1) the trial court lacked jurisdiction to declare decedent's will invalid; (2) the trial court's judgment in favor of plaintiff on her amended complaint was against the manifest weight of the evidence; and (3) the trial court erred in striking their affirmative defenses and dismissing Allen's counterclaim with prejudice. For the reasons set forth below, we agree that the trial court erred in striking defendants' second affirmative defense and a counterclaim by Allen that corresponded to the second affirmative defense. As such, we affirm in part, reverse in part, and remand for further proceedings.

¶ 6                            II. BACKGROUND

¶ 7 Decedent died unexpectedly on March 9, 2021, when the motorcycle he was operating was struck by an automobile. At the time of his death, decedent was 57 years of age. He was survived by his father (Allen), his two brothers (Steven and Michael), and his significant other (plaintiff). Palma Butts (Palma), decedent's mother and Allen's wife, passed away prior to decedent.

¶ 8                      A. Probate Case (21-P-383)

¶ 9 Allen, believing decedent passed away without a will, filed a petition for letters of administration on June 15, 2021, in the circuit court of Kane County, certifying that decedent had died intestate. This cause was assigned case No. 21-P-383. On June 18, 2021, the trial court entered an order granting independent administration of decedent's estate to Allen, as administrator.

¶ 10 On June 21, 2021, plaintiff filed in the circuit court of Kane County a document dated November 12, 2020, entitled "Last Will and Testament of Thomas A. Butts" (decedent's will).

Plaintiff was one of two attesting witnesses to decedent's will. Plaintiff then filed a petition for probate of decedent's will on July 19, 2021, which petition verified plaintiff's belief that the will was valid. Plaintiff's petition was assigned case No. 21-P-460. Plaintiff took no further action to admit decedent's will to probate and the matter (21-P-460) was dismissed on September 13, 2022, for want of prosecution.

¶ 11 Separately, on August 6, 2021, counsel for plaintiff entered an appearance in case No. 21-P-383. On September 2, 2021, plaintiff filed various documents, including a petition to terminate the independent administration of decedent's estate and a motion to convert decedent's estate to a supervised estate. In response to plaintiff's pleadings, the trial court converted decedent's estate to supervised administration and appointed Allen as the supervised administrator of the estate.

¶ 12 Claims were filed against decedent's estate in the probate case on September 3, 2021, on behalf of plaintiff (plaintiff's claim) and on January 7, 2022, on behalf of Warbirds of North America (Warbirds), a non-profit, section 501(c)(3) charitable organization (see 26 USC § 501(c)(3) (2020)) (the Warbirds claim). These claims sought to enforce what plaintiff called a "Will Contract" and the interests of plaintiff and Warbirds in, among other things, the Edward Jones accounts, which had been distributed to Allen.

¶ 13 Thereafter, on January 17, 2023, Allen filed a petition for probate of will and letters testamentary in case No. 21-P-383, seeking to probate decedent's will. Over plaintiff's objection, the trial court admitted decedent's will to probate on January 19, 2023.

¶ 14                    B. Declaratory Judgment Action (21-MR-1476)

¶ 15 Meanwhile, on August 24, 2021, plaintiff filed an action for declaratory judgment and other relief against decedent's estate and others in the circuit court of Kane County. Plaintiff's complaint was assigned case No. 21-MR-1476. In her complaint, plaintiff alleged that she and decedent had

entered into a civil contract pursuant to which decedent agreed to leave plaintiff certain assets upon his death and to disinherit Steven and Michael. The case was subsequently transferred to the judge presiding over the probate case.

¶ 16    On September 14, 2022, plaintiff filed a verified amended complaint for declaratory judgment and other relief against decedent's estate, Allen (individually, as the administrator of decedent's estate, and as trustee of the Allen & Palma Butts Family Trust), Steven, and Michael. In the amended complaint, plaintiff alleged as follows. Plaintiff and decedent lived together as a couple for more than 20 years before his death. Plaintiff cared for decedent's parents (Allen and Palma), regularly acting as their medical advocate during doctor visits and hospital stays and preparing dinner for Allen daily after Palma moved to a memory-care facility. Plaintiff and decedent formed and operated Leading Edge Flight Services, Inc. (Leading Edge), an aviation consulting company, of which decedent was the sole shareholder and president. Leading Edge owned three aircraft, including a 1957 U.S. military aircraft that plaintiff and decedent worked to restore. The income decedent generated from Leading Edge enabled him to invest in the Edward Jones accounts. Plaintiff and decedent also formed Warbirds, the purpose of which was to generate interest in vintage aircraft.

¶ 17    Plaintiff further alleged that by July 2014, decedent orally agreed that he would make a will by which he would transfer to her all his assets, including his home, Leading Edge, and the Edward Jones accounts. On November 12, 2020, following a "harrowing experience" in which they almost lost control of an aircraft they were piloting together, decedent created and signed decedent's will using a do-it-yourself form from the internet. Decedent's will included a schedule of beneficiary designations specifying that if decedent predeceased plaintiff, plaintiff would inherit the home, all household items and personal property, Leading Edge, and decedent's automobiles.

Decedent's will designated Warbirds as the recipient of the Edward Jones accounts and plaintiff as the recipient of Warbirds. Decedent's will also included a "Disinherit Schedule," wherein decedent voiced his intention to disinherit his two brothers, Steven and Michael. Plaintiff created and signed a "temporary will" on the same date.

¶ 18 Plaintiff additionally alleged that she made an appointment with an estate planning attorney to prepare proper estate planning documents in accordance with the oral agreement, but decedent unexpectedly died before those documents could be drafted. Further, between November 2020 and March 2021, she and decedent had multiple conversations with Sheldon Clark, their investment advisor at Edward Jones, about designating the death beneficiary on the Edward Jones accounts in accordance with the oral agreement. Although Clark agreed to send them paperwork to effectuate those changes, he never did so. Soon after decedent's death, plaintiff emailed Clark, advising him that she had a claim to the assets in the Edward Jones accounts and instructing him to retain the assets until a court order could be obtained determining the rightful owner thereof. Nevertheless, Edward Jones distributed the accounts to Allen, apparently under a previous death-beneficiary designation by decedent. Plaintiff claimed that the assets previously held in the Edward Jones accounts were being held in an account under Allen's name, the death beneficiaries of which are Michael and Steven or the Butts Family Trust for the benefit of Michael and Steven.

¶ 19 In count I of her complaint, plaintiff sought a declaration that decedent's alleged agreement to create a will was enforceable against decedent's estate and that she was entitled to ownership of all probate assets in decedent's estate, as well as all assets previously held in the Edward Jones accounts, which had been distributed to Allen under the death-beneficiary designation. In count II, plaintiff sought the imposition of a constructive trust on all probate assets in decedent's estate and all assets previously held in the Edward Jones accounts under a theory of unjust enrichment.

¶ 20    On October 7, 2022, Allen (individually and as supervised administrator of decedent's estate), Michael, and Steven filed a verified answer and affirmative defenses to the amended complaint, denying that decedent had orally agreed to make a will transferring all his assets to plaintiff. Allen (individually and as supervised administrator of decedent's estate) also filed a verified counterclaim for declaratory and other relief against plaintiff. Both filings, which were later amended, asserted that: (1) decedent's will is valid, but that since plaintiff witnessed decedent's will, her beneficial interest thereunder is void under section 4-6 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/4-6 (West 2020)) (first affirmative defense and corresponding counterclaim); and (2) the Edward Jones accounts are non-probate assets based on decedent's designation of Allen as the primary beneficiary and, pursuant to section one of the Third Party Beneficiary Contract Act (755 ILCS 30/1 (West 2020)), cannot be defeated by plaintiff's claim of a contract to make a will or unjust enrichment (second affirmative defense and corresponding counterclaim). On December 7, 2022, plaintiff moved to strike the affirmative defenses and dismiss the counterclaim pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). Plaintiff essentially asserted that both statutory provisions cited by defendants in their affirmative defenses and Allen in his counterclaim are inapplicable and that neither statute operates to defeat her causes of action.

¶ 21    Following a hearing on May 16, 2023, the trial court, with little explanation, granted plaintiff's motion, struck defendants' affirmative defenses, and dismissed Allen's counterclaim with prejudice pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). In making the ruling, the court stated that it was "not sure [decedent's will] is a valid will," but that "it is evidence of a contract for a will." Defense counsel sought clarification of the trial court's ruling, asking the court "are you ruling today that it is your position that the decedent's will that's been

admitted to the probate [*sic*] is not a valid will?" The trial court responded in the affirmative. The court's ruling was memorialized in a written order dated May 22, 2023.

¶ 22                                C. Bench Trial

¶ 23    Following discovery, these matters proceeded to a bench trial on January 16, 2024. The same day, plaintiff purported to withdraw the Warbirds claim "on behalf of Warbirds" (plaintiff and Warbirds were represented by the same counsel). The following evidence and testimony were presented.

¶ 24        1. Decedent's Relationship with Plaintiff and the Alleged Contract for Will

¶ 25    Plaintiff testified that she is 52 years of age and resides in Hampshire, in the home that was owned by decedent. Plaintiff is employed by Microsoft, where she has worked for the past 10 years. Plaintiff met decedent in January 2001, and they began living together a few months later. Decedent traveled frequently, but was at home in the early years of his relationship with plaintiff. In 2002 or 2003, decedent decided that he wanted to learn how to fly airplanes, so he became certified. In 2003, decedent bought his first plane, a Warrior. Also in 2003, plaintiff and decedent created Leading Edge to limit decedent's liability due to his ownership of the plane. Initially, the income generated by Leading Edge was from the lease of the Warrior to a flight school. In 2005, plaintiff and decedent bought another plane, a 1957 T-28, and created Warbirds to help manage its restoration.

¶ 26    Around 2010, decedent left his job and began working for himself through Leading Edge, which became a consulting company. Decedent did the consulting, while plaintiff performed tasks such as payroll and invoicing. Plaintiff was not compensated for her work at Leading Edge.

¶ 27    According to plaintiff, she and decedent "made provisions" to leave their assets to each other and agreed that each "provided certain things to the other in life." Her part of the agreement

was to take care of the business of Leading Edge and Warbirds, provide meals for Allen on a regular basis, and help decedent with medical care and advocacy for his parents. In addition, plaintiff agreed to change the beneficiaries on her life insurance policies and to make decedent the primary beneficiary on her 401(k) and Fidelity account. In 2016, plaintiff added decedent to her employer's health plan as a domestic partner. Plaintiff testified that she and decedent intended to create wills and trusts that would benefit each other and that they made this agreement at least by 2014, based on her recollection of certain events, including that decedent's mother Palma, who had Alzheimer's disease, moved into a memory-care facility. Plaintiff testified that estate planning documents reflecting this agreement were not prepared in this timeframe because decedent procrastinated a lot and he was gone from Sunday afternoon through Friday night, with very few exceptions.

¶ 28    Plaintiff testified that she and decedent would visit Palma at the memory-care facility on Saturday evenings. She would also attend quarterly meetings with the staff that decedent could not attend because he was out of town, she would chat with the director of the facility about once a month, and she would regularly communicate with the staff to advise them what decedent wanted. Plaintiff further testified that in the time frame 2014 to 2021, she provided meals to Allen almost every day, took him to doctor appointments when her schedule allowed, stayed with him for outpatient visits, visited him every day during in-patient stays, and helped him select Medicare plans.

¶ 29    Plaintiff testified that her own mother had health conditions and that she would frequently leave her mother's early to make dinner for Allen. During this time, plaintiff wanted to move to Texas because she "hated Illinois," she did not care for the weather or political climate, and decedent was already in Texas every week. Plaintiff's mother died in 2017, and plaintiff had

applied, and interviewed for, another position at Microsoft in Texas. However, she withdrew her application once she discussed the situation with decedent, who thought they needed to stay around longer because Allen had been diagnosed with cancer. Plaintiff testified that the situation affected her decision to not take the job in Texas, which would have provided her a higher salary and opportunities for advancement.

¶ 30                                    2. Decedent's Will

¶ 31    Plaintiff testified that in November 2020, she and decedent were flying from De Kalb to Tennessee in a plane decedent was piloting when they encountered dense fog while approaching the airport. All the "terrain alerts" went off, and decedent had to climb approximately 7,000 feet to clear the clouds. Plaintiff testified that she was "terrified" and that she told decedent they needed wills and powers of attorney in case one of them died or needed care. Within hours, she and decedent created wills from the internet, including decedent's will.

¶ 32    Plaintiff testified that both she and decedent intended their wills to be, and believed them to be, valid wills. Plaintiff's position on decedent's will is that she is entitled to all of decedent's assets, including the Edward Jones accounts, but not a $100,000 life insurance policy to Allen. Nevertheless, she acknowledged the beneficiary schedule in decedent's will called for Warbirds to receive 100% of the Edward Jones accounts and that it was expressly designated as a "charitable gift." When pressed on the issue and reminded of the contents of decedent's will, plaintiff testified that decedent did not want the funds to go to Warbirds, but that decedent wanted her to have the assets to finish the plane restoration project, and that because she, her brother, and her uncle constituted the board of Warbirds, they essentially controlled the flow of funds from Warbirds.

¶ 33    Gary Heath met decedent in 2016 or 2017, and they became friends and workout partners. Heath described plaintiff's and decedent's relationship as "a marriage, a commitment to one

another." Heath testified that decedent told him that when he (decedent) was working out of town, plaintiff "was taking Allen to the doctors and making sure he had the right food and cooking for him." Heath stated that plaintiff "was willing to do all the work she did, on top of her job and on top of keeping the house *** together." Heath initially testified that decedent never told him that he had prepared a will. Heath later acknowledged that decedent did tell him that he had a will. Heath agreed that if decedent did prepare a will, it would evidence his intentions. Heath testified that decedent told him that he wanted plaintiff "to have everything that he owned."

¶ 34    Eva Schweitzer is married to plaintiff's uncle and has known plaintiff since 1982. Schweitzer met decedent in 2000 or 2001. Schweitzer testified that decedent and plaintiff were close and "appeared to be a very loving couple." Schweitzer testified that plaintiff researched and found a memory-care facility for Palma. Further, plaintiff recommended a nephrologist for Allen, found a cleaning service to care for Allen's home, prepared meals for Allen, ensured Allen arrived to his medical appointments, and checked in on Allen when decedent was traveling. Schweitzer testified that decedent and plaintiff postponed moving to take care of decedent's parents. Schweitzer testified that decedent was appreciative of the things that plaintiff did for his parents, but she did not know how much actual time plaintiff devoted to the care of Palma and Allen.

¶ 35    Schweitzer recalled talking with plaintiff and decedent about an "internet will" after decedent and plaintiff had a bad flying experience and that "basically" they were leaving each other everything, that decedent did not want his brothers to get anything, and that decedent wanted to leave Allen an insurance policy. Schweitzer agreed that regardless of whether the wills followed the gist of what decedent and plaintiff had discussed with her, she believed they wanted the wills enforced, as written, even where the wills made dispositions other than to each other.

¶ 36    Margaret Franck is plaintiff's long-time friend. Franck testified that she met decedent in 2001, shortly after decedent and plaintiff began dating. Asked to what extent she would characterize decedent's and plaintiff's relationship as "devoted," Franck responded "very much so." Franck testified that in November 2020, plaintiff called her the day after she and decedent had a frightening flying experience and told her that the two of them used an internet program to prepare wills. Franck saw the wills because plaintiff emailed them to her. Franck testified that plaintiff told her that she (plaintiff) and decedent agreed to leave each other their property and estates, but Franck agreed that she believed their actual intentions were set forth in their respective wills.

¶ 37    Allen admitted that decedent did not discuss his estate plan or assets with him. Nevertheless, Allen believed that if decedent prepared and signed a will, the contents of the will would evidence decedent's intent. Allen reviewed the beneficiary schedule on decedent's will and agreed that not everything bequeathed in decedent's will was to go to plaintiff, just as not everything in plaintiff's will would have been bequeathed to decedent.

¶ 38                                  3. Edward Jones Accounts

¶ 39    Sheldon Clark is a financial advisor at Edward Jones. Decedent, plaintiff, and Allen were all clients of Clark. Clark testified that decedent never told him that he planned to give his estate to plaintiff. Further, decedent never asked Clark to prepare any beneficiary forms to accomplish that.

¶ 40    Clark testified that the transfer-on-death beneficiaries for decedent's Edward Jones investment and IRA accounts were Allen and Palma, which is reflected in beneficiary-designation forms dated October 8, 2014, and August 29, 2017, respectively. Clark did not recall decedent ever requesting to change his beneficiaries to plaintiff. But, he stated, if decedent had made such a

request, it would have been done because it is a simple process. Clark further testified that he could not recall having a conversation with decedent about naming Warbirds as a beneficiary under either his Edward Jones brokerage account or his Edward Jones IRA account.

¶ 41   Plaintiff testified that between what happened in Tennessee in November 2020 and decedent's accident in March 2021, she and decedent made multiple calls to Clark to have the death beneficiary on the Edward Jones accounts changed to her. Plaintiff also recalled a luncheon in May 2018, where she told Clark that she "still needed the beneficiary form," to which Clark responded, "Oh boy, yes. We need to take care of that. [Decedent] definitely doesn't want his brothers to inherit anything from him."

¶ 42                                    4. Further Attempts at Estate Planning

¶ 43   Plaintiff testified that through her employment benefits, she obtained a list of estate-planning attorneys. The morning of decedent's accident, plaintiff contacted an estate-planning attorney from the list to schedule an appointment for their estate plan. However, decedent passed away before she and plaintiff could meet with the estate-planning attorney.

¶ 44                        5. Decedent's and Plaintiff's Relationship with Allen

¶ 45   At the time of trial, Allen was 85 years of age. Allen testified that decedent was a devoted son, he loved decedent, he and decedent had a very close relationship, and he believed that he knew decedent better than anyone else, including plaintiff. Over the years, Allen and decedent did many things together, including building decedent's home and working on motorcycles. Allen believed decedent was an honest man and a hard worker. Allen testified that he and decedent never talked about personal financial matters.

¶ 46   Allen testified that his net worth is about $2.6 million. Allen stated that he has a trust which leaves all his assets to Steven (his surviving son) and to the wife and children of Michael, one of

his deceased sons. Allen testified that over the past 10 to 15 years he has had some very serious illnesses, including prostate cancer, bladder cancer, skin cancer, and a heart attack. Allen agreed that he has already lived longer than some of his doctors expected. Allen testified that unless he personally uses all his assets during his lifetime, any part of the assets he would receive from decedent would pass through his trust and go to Steven and to Michael's wife and family. Allen's trust gives nothing to Warbirds, and he has not pledged or promised to do so.

¶ 47 Heath testified that decedent had a great deal of affection for Allen and that decedent indicated he would not leave the Chicago area until both of his parents had passed. Decedent told Heath that, in decedent's absence, plaintiff was taking care of Allen's medical and dietary needs.

¶ 48 Franck testified that plaintiff's and Allen's relationship seemed very familiar and comfortable, and that she was present on at least one occasion when plaintiff checked on Allen at Allen's home. Other than with respect to maybe three or four occasions when Franck was present while plaintiff prepared meals for Allen, she had no personal knowledge of how often plaintiff cared for Allen. However, over the course of many years, Franck had conversations with plaintiff in which plaintiff would tell her about the care she provided for Allen and Palma. Franck testified that decedent and plaintiff stayed in Illinois to be close to decedent's parents.

¶ 49 It was Schweitzer's impression that decedent and plaintiff would assist with finding Allen and Palma caregivers and preparing meals. Schweitzer had no personal knowledge of how much time plaintiff may have assisted with Allen or Palma.

¶ 50 Steven testified that since decedent's passing, plaintiff has provided no support whatsoever to Allen and that Allen is able to drive himself to his appointments, organize and take his medications, and order supplies.

¶ 51 6. Decedent's Relationship with His Brothers

¶ 52    Allen testified that he was aware that decedent did not have the best relationship with his brothers and did not particularly enjoy their company. Allen agreed that decedent told him Steven and Michael were wrong in not helping take care of Palma and Allen.

¶ 53    Steven testified that growing up, the household had a regular family dynamic and that he had a normal childhood. Decedent was the best man at Michael's wedding. Steven and his wife also asked decedent to be their oldest daughter's godfather. Steven confirmed that after Palma needed Alzheimer's care, decedent became estranged from both him and Michael. But even after the estrangement, Steven believed decedent would still have done anything for him and Steven stated that he would have done anything for decedent.

¶ 54    According to Heath, decedent did not have a relationship with his brothers because decedent felt his brothers were unwilling to help care for Allen and Palma. Heath further testified that decedent told him he did not want his brothers to get any of his money and wanted plaintiff "to have everything that he owned."

¶ 55    Franck never heard decedent discuss that he did not want his brothers to inherit any of his assets, only that decedent had advised he was not close with his brothers and did not have a relationship with them.

¶ 56    Clark recalled decedent expressing resentment and disappointment towards his brothers. Decedent was irritated to the point where he would use "colorful language" to describe his brothers.

¶ 57    Plaintiff testified that decedent's brothers were unwilling to help care for Palma and Allen. Decedent felt this was disrespectful, and it frustrated and upset him. This caused a strain in the relationship between decedent and his brothers. Decedent told others that he did not want his brothers to receive any of his assets.

¶ 58                              7. The Trial Court's Ruling

¶ 59    The parties submitted written closing arguments. In an order dated August 8, 2024 (but file stamped on August 12, 2024), the trial court found that decedent entered into an agreement with plaintiff to leave all his assets to her. It awarded plaintiff "all of the assets of decedent's estate" and imposed a constructive trust on the Edward Jones accounts and the probate assets for plaintiff's benefit. The trial court further denied "the issue of attorney's fees."

¶ 60    Both parties moved to modify or clarify the August 12, 2024, order regarding various matters, including "the issue of attorney's fees," and plaintiff also requested a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016) and a directive to Allen to distribute to plaintiff the probate estate assets and the assets previously transferred from the Edward Jones accounts. On August 27, 2024, defendants filed a notice of appeal in each case from the trial court order dated May 22, 2023 (striking defendants' affirmative defenses and dismissing Allen's counterclaim) and the trial court order dated August 8, 2024 (file stamped August 12, 2024). We docketed the probate appeal (21-P-383) as case No. 2-24-0506 and the declaratory judgment appeal (21-MR-1476) as case No. 2-24-0510.

¶ 61    Meanwhile, on September 9, 2024, the trial court granted defendants' motion for purposes of clarifying the issue of attorney fees and granted in part and denied in part plaintiff's motion, stating that it would enter a revised judgment. On September 11, 2024, the trial court entered a revised judgment order, again awarding plaintiff "all of the assets of decedent's estate," imposing a constructive trust on the Edward Jones accounts and the probate assets for plaintiff's benefit, ordering that all the probate estate assets be distributed to plaintiff, and ordering Allen to transfer to plaintiff all assets previously transferred to him from the Edward Jones accounts. The court explained:

"This is based on clear and convincing testimonial evidence provided by a number of witnesses and as reflected in the purported will of the decedent and the almost identical purported wills of decedent and [plaintiff] [*sic*], and her substantial performance of what has been referred to as obligations in accordance with the agreement between the decedent and [plaintiff], including turning down an opportunity for promotion and moving to the State of Texas in her employment, and [plaintiff] having made the decedent her beneficiary on her investments and other financial accounts, and helping the decedent conduct his business by which he amassed his assets and which without her assistance, he might not have been so free to travel in his business, and assisting the decedent's father and late mother.

\*\*\*

The evidence strongly supports the allegations that the decedent intended that [plaintiff] was to receive all of his assets, except one life insurance policy that was to go to Allen \*\*\*. The evidence is stronger and appears to be completely unrebutted that the decedent absolutely and without question did not want any of his assets to go to or become the property of either of his brothers, Steven or the late Michael, or Michael's family, and the award in favor of [plaintiff] of the decedent's property and the impressing of a constructive trust on the decedent's Edward Jones investment account and the decedent's probate assets appears to be consistent with the decedent's often expressed wishes, orally and in writing, that his brothers Michael and Steven receive none of the assets of the decedent or his estate."

¶ 62    The trial court reserved ruling on any pending and future petitions for attorney fees of the administrator of decedent's estate until the conclusion of any appeal.[2] It further found that the judgment disposed of all claims against all parties in the declaratory judgment action or, alternatively, that there was no just cause for delay of enforcement or appeal of the judgment under Illinois Supreme Court Rule 304(a) (eff. March 8, 2016) and that the order was final and appealable as to plaintiff's claim in the probate case under Illinois Supreme Court Rule 304(b)(1) (eff. March 8, 2016). On October 11, 2024, defendants filed a notice of appeal in each case from the trial court orders dated May 22, 2023, and September 11, 2024. We docketed the appeal from the declaratory judgment action (21-MR-1476) as No. 2-24-0615 and the appeal from the probate case (21-P-383) as No. 2-24-0617. All four appeals were subsequently consolidated.

¶ 63                              III. ANALYSIS

¶ 64    On appeal, defendants argue that reversal of the trial court's judgment is warranted for various reasons. First, they argue that the trial court lacked jurisdiction to invalidate decedent's will because no petition to contest the will was filed within six months of the will's admission to probate. Defendants also argue that the trial court's judgment in favor of plaintiff on counts I and II of her amended complaint and the corresponding probate case was against the manifest weight of the evidence. Finally, defendants contend that the trial court erred in striking their affirmative defenses and dismissing Allen's counterclaim pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). We address each of these contentions in turn.

¶ 65                              A. Jurisdiction

---

[2]Counsel for the administrator of decedent's estate filed a petition for attorney fees in the probate case on November 8, 2023, which had not yet been ruled upon.

¶ 66 Defendants first argue that the trial court lacked jurisdiction to invalidate decedent's will when it ruled on plaintiff's motion to strike their affirmative defenses and dismiss Allen's counterclaim. Defendants' argument is centered on section 8-1(a) of the Probate Act (755 ILCS 5/8-1(a) (West 2020)), which requires an interested party to file a petition to contest the validity of a will within six months after the will is admitted to probate. See *In re Estate of Mohr*, 357 Ill. App. 3d 1011, 1014 (2005). Defendants assert that the time limit set forth in section 8-1(a) is jurisdictional. See *Mohr*, 357 Ill. App. 3d at 1014. As such, in the absence of compliance with the applicable time limit, the trial court loses jurisdiction to hear a will contest. In support of their argument, defendants note that decedent's will was admitted to probate on January 19, 2023. In May 2023, when the trial court ruled on plaintiff's motion to strike defendants' affirmative defenses and dismiss Allen's counterclaim, it determined that decedent's will was invalid. Defendants reason, however, that because no petition or suit to invalidate the will had been filed by any party prior to the May 2023 hearing, the trial court was without jurisdiction to determine "*sua sponte*" that decedent's will was invalid. Therefore, the court's order striking their affirmative defenses and dismissing Allen's counterclaim should be reversed. Defendants acknowledge that this issue was not raised previously, but note that the lack of subject-matter jurisdiction can be raised at any time, even on appeal. See *City of Marseilles v. Radke*, 287 Ill. App. 3d 757, 761 (1997).

¶ 67 Plaintiff counters that the six-month limitations period in section 8-1(a) of the Probate Act does not apply here because neither her complaint nor the related pleadings asked the court to make a finding on the validity of the will. To the contrary, according to plaintiff, the validity of the will is immaterial to either the issue of whether there was a contract to make a will, trust, or other contractual instrument or the issues raised in the related affirmative defenses and

counterclaim. Plaintiff points out that at the May 2023 hearing, the trial court did not initially make a specific finding as to the validity of the will because it did not need to when adjudicating the legal issues presented by her motion to strike defendants' affirmative defenses and dismiss Allen's counterclaim. It was only after defense counsel asked for clarification that the trial court declared the will invalid. Plaintiff further argues that even if her complaint and the related proceedings are "retroactively construed" to ask the trial court to make a finding on the validity of decedent's will, the trial court would have had jurisdiction to make its finding because the subject complaint was filed and pending as part of the consolidated proceedings at the time the trial court admitted decedent's will to probate. As such, plaintiff alternatively asserts, any question as to the validity of the will was timely made before the statutory period expired.

¶ 68    Although not cited by either party, we note at the outset that in *In re Estate of Young*, 2020 IL App (2d) 190392, ¶¶ 20-26, we rejected the notion that section 8-1(a) of the Probate Act is jurisdictional. While acknowledging that some prior cases deemed the six-month limitation period jurisdictional (*Young*, 2020 IL App (2d) 190392, ¶ 26 (citing *Ruffing v. Glissendorf*, 41 Ill. 2d 412, 419 (1968) and *Mohr*, 357 Ill. App. 3d at 1014)), we concluded that the supreme court declined to adopt this view in *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 338 (2002) (*Young*, 2020 IL App (2d) 190392, ¶ 26). We explained:

    "The *Belleville* court noted that, beginning with the 1964 amendments to the judicial article of the 1870 constitution, the legislature's role in determining the jurisdiction of the circuit court 'radically changed.' [*Belleville*, 199 Ill. 2d] at 337. Thereafter, the circuit court had jurisdiction over all justiciable matters, and the legislature's power to define the court's jurisdiction was limited to administrative review. *Id*. (further noting that the 1970 constitution retained this language). The supreme court questioned the

- 20 -

precedential value of case law that examined the court's jurisdiction under pre-1964 law. *Id*. As relevant here, the court *rejected* the pre-1964 rule that 'a limitations period contained in a statute that creates a substantive right unknown to the common law, and in which time is made an inherent element of the right, is more than an ordinary statute of limitations; it is a condition of the liability itself and goes to the subject matter jurisdiction of the court.' *Id*. at 338. The rule 'under which time limitations in statutory actions are deemed jurisdictional, is not a rule of general applicability to all statutory causes of action. Rather, the rule is limited by the constitutional context in which it first arose.' *Id*. at 340. *Belleville* instructs that the trial court has jurisdiction to hear a will contest, because it is among the class of cases—those presenting a claim under the Probate Act, a justiciable matter—'to which the court's constitutionally granted original jurisdiction extends.' *Id*. at 340-41 (further holding that the limitations period contained in the vehicle-franchise statute was not a jurisdictional prerequisite to suit). Thus, to the extent that post-1964 case law views the six-month limitation in section 8-1(a) of the Probate Act as a jurisdictional requirement, *Belleville Toyota* instructs that that case law is no longer controlling." (Emphasis in original.) *Young*, 2020 IL App (2d) 190392, ¶ 26.

Our holding in *Young* seemingly forecloses defendants' jurisdictional argument. But see *In re Estate of Ellis*, 236 Ill. 2d 45, 50 (2009) (stating, in case decided after *Belleville Toyota*, but without referencing that case, that the six-month limitation period in section 8-1(a) of the Probate Act is jurisdictional).

¶ 69    *Young* aside, we also point out that defendants' claim that the trial court "*sua sponte*" declared decedent's will invalid lacks support in the record. The term "*sua sponte*" means "[w]ithout prompting or suggestion; on its own motion." Black's Law Dictionary (12th ed. 2024).

Although the trial court, in ruling on plaintiff's motion to strike defendants' affirmative defenses and dismiss Allen's counterclaim, questioned the validity of decedent's will, it did not initially decide whether the will was invalid. Rather, it was only in response to defense counsel's inquiry whether the trial court was "ruling today *** that the decedent's will that's been admitted to probate is not a valid will" that the trial court stated that the will was invalid. In other words, the trial court's finding was made at *defendants'* prompting. It was also made in May 2023 and thus was within the six-month period set forth in section 8-1(a) of the Probate Act (755 ILCS 5/8-1(a) (West 2020)). As such, defendants' claim that no interested party requested a finding on the validity of decedent's will within six months after the admission of decedent's will to probate is not supported by the record.

¶ 70 Regardless, defendants' jurisdictional argument fails for a simpler reason—it relies on the mistaken premise that resolution of plaintiff's complaint depends on the validity of the will. As defendants correctly note section 8-1(a) of the Probate Act provides that within six months after a will is admitted to probate, "any interested person may file a petition in the proceeding for the administration of the testator's estate or, if no proceeding is pending, in the court in which the will was admitted to probate." 755 ILCS 5/8-1(a) (West 2020). A will contest is a *quasi in rem* proceeding to set aside a will. *Ellis*, 236 Ill. 2d at 51. "The single issue in a will contest is whether the writing produced is the will of the testator." *Ellis*, 236 Ill. 2d at 51. "Any ground which, if proved, would invalidate the will, including undue influence, incapacity, fraud, or revocation, may state a cause of action." *Ellis*, 236 Ill. 2d at 51. However, a claim that does not seek or require the invalidation of a will does not implicate section 8-1(a) of the Probate Act. See, *e.g.*, *Bjork v. O'Meara*, 2013 IL 114044, ¶¶ 22-32 (holding that six-month period applicable for filing a will contest did not apply to bar a tort claim for intentional interference with inheritance as, under the

circumstances of the case, that cause of action did not contest the validity of the will); *Ellis*, 236 Ill. 2d at 51-57 (same); but see *Robinson v. First State Bank of Monticello*, 97 Ill. 2d 174, 182 (1983) (declining to recognize tort action for intentional interference with inheritance where the plaintiffs engaged an attorney to determine whether they should file a will contest, decided not to contest the will, entered into a settlement agreement, and allowed the statutorily-prescribed period in which to contest the will to expire).

¶ 71    Turning to the facts in this case, we conclude that the limitations period in section 8-1(a) of the Act does not apply because plaintiff did not seek a finding that decedent's will was invalid and resolution of the claims in plaintiff's amended complaint do not depend on the validity of decedent's will. Count I of plaintiff's amended complaint sought a declaration that plaintiff is entitled to all of decedent's probate assets based on a breach of contract to make a will, trust, or other contractual instrument. Significantly, plaintiff's complaint did not allege undue influence, incapacity, fraud, revocation, or any other ground which, if proved, would invalidate defendant's will. Moreover, resolution of count I of plaintiff's complaint does not require a determination of the validity of decedent's will. It merely requires a finding that the alleged oral contract was valid and enforceable. The validity of decedent's will is immaterial. See, *e.g.*, *Jatcko v. Hoppe*, 7 Ill. 2d 479, 486-87 (1955) (specifically enforcing oral contract to make a will over contrary subsequent written will; court did not opine on validity of written will); *In re Estate of Vinkus*, 2013 IL App (3d) 110864-U, ¶¶ 20-34 (affirming summary judgment in the plaintiff's favor, finding that the plaintiff established a valid and oral contract to make a will that superseded the terms of the decedent's written will); *In re Estate of Spaulding*, 187 Ill. App. 3d 1031, 1035 (1989) ("A contract to make a will supported by valid and adequate consideration, is enforceable in a court of equity."). In count II of the amended complaint, plaintiff raised a claim for unjust enrichment against

defendants, seeking a constructive trust and the transfer to her of all of decedent's probate assets based on the alleged oral contract as well as the non-probate assets. Like count I, count II of plaintiff's complaint did not seek a finding on the validity of the will and it does not require a finding of the validity of decedent's will. Hence, we reject defendants' jurisdictional challenge.

¶ 72                    B. Plaintiff's Amended Complaint

¶ 73    Next, defendants argue that the trial court's judgment in favor of plaintiff on counts I and II of her amended complaint and the corresponding probate claim are against the manifest weight of the evidence. We address each count separately.

¶ 74                    1. Count I—Contract for a Will

¶ 75    An oral contract to make a will, supported by valid and adequate consideration, may be valid and enforceable. *Burke v. Burke*, 12 Ill. 2d 483, 486 (1957); *Laughlin v. France*, 241 Ill. App. 3d 185, 195 (1993); *Spaulding*, 187 Ill. App. 3d at 1035; *In re Estate of Nelson*, 103 Ill. App. 3d 640, 642 (1981). Such a contract "is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof *** to ascertain what the parties have agreed to do." (Internal quotation marks omitted.) *Pritchett v. Asbestos Claims Management Corp.*, 332 Ill. App. 3d 890, 896 (2002). The burden of proof is on the party attempting to establish the contract. *Laughlin*, 241 Ill. App. 3d at 195.

¶ 76    Courts accept with caution evidence offered in support of an alleged contract to make a disposition of a deceased person's property different from that provided by law. *Jatcko*, 7 Ill. 2d at 484-85. One who seeks to enforce an oral contract for a will must establish the existence and terms of such contract by clear, explicit, and convincing evidence. *In re Estate of Kucharski*, 3 Ill. App. 3d 32, 36 (1971). Mere statements by the deceased of his or her intention to make a will are insufficient proof to warrant the inference that a contract of any kind was made. *Spaulding*, 187

Ill. App. 3d at 1036. Nevertheless, "[a] contract to make a will may be proved by declarations and conduct of the parties not in the presence of each other." *In re Estate of Niehaus*, 341 Ill. App. 454, 459 (1950). In addition, a party's acceptance of the contract "may be shown by circumstantial evidence, direct proof is not essential." *Niehaus*, 341 Ill. App. at 459. Where a party is seeking to enforce a purported oral contract to make a will in exchange for personal services, the trial court must scrutinize the evidence presented with "scrupulous care." *Kucharski*, 3 Ill. App. 3d at 36.

¶ 77 The existence of an oral contract, its terms, and the intent of the parties are questions of fact. *Laughlin*, 241 Ill. App. 3d at 195. Further, when reviewing the testimony and evidence from the trial, the weight and believability to be given "is a task solely within the province of the fact finder." *Laughlin*, 241 Ill. App. 3d at 196-97. The trier of fact's findings will not be disturbed on review unless they are against the manifest weight of the evidence. *Laughlin*, 241 Ill. App. 3d at 195. A finding is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent or if the finding is unreasonable, arbitrary, or not based on the evidence presented. *Graham v. Van Rengen*, 2024 IL App (2d) 230611, ¶ 53. With these principles in mind, we turn to the parties' arguments.

¶ 78 Defendants contend that the trial court's entry of judgment in favor of plaintiff on count I of her amended complaint was against the manifest weight of the evidence and should be reversed. According to defendants, plaintiff did not establish by clear and convincing evidence the definite and certain terms required under Illinois law for a contract-for-will and the purported contract was demonstrably inconsistent with the only written instructions decedent provided for the disposition of his assets. Defendants further maintain that there is nothing to suggest that plaintiff's decision to stay with decedent in Illinois, to help him with his business, or to look after his family in his absence "was anything other than the result of the 'affinity' two people have in a loving

relationship." Defendants also contend that plaintiff did not establish substantial reliance on the agreement, describing certain services plaintiff performed as "done gratuitously without an expectation of payment." As such, defendants claim that plaintiff failed to establish definite and specific terms of the alleged contract-for-will or her substantial reliance on decedent's alleged promise to leave her all his assets in exchange for performing certain services for him.

¶ 79    Plaintiff counters that the trial court's judgment on count I of her declaratory judgment action was not against the manifest weight of the evidence. According to plaintiff, she presented evidence supporting the existence, terms, and intent of the will contract. Plaintiff further asserts that her testimony on these key elements was not only unrebutted, it was corroborated by other substantial and unrebutted testimony and evidence that, in its totality, was sufficient to support the trial court's judgment.

¶ 80    We agree with plaintiff. Here, the trial court found that decedent entered into an agreement with plaintiff to leave all his assets to her based on the testimony of "a number of witnesses" and as reflected in decedent's "purported will" and the almost identical purported will of plaintiff. The trial court also cited plaintiff's performance of "obligations" in accordance with the agreement between decedent and plaintiff. The trial court stated that plaintiff's substantial performance included turning down an opportunity for a job promotion and moving to Texas in her employment, making decedent the beneficiary on her investments and other financial accounts, helping decedent conduct his business by which he amassed his assets and which, without her assistance, he might not have been so free to travel in his business, and assisting decedent's father and late mother. The trial court concluded that this evidence strongly supported the allegations that decedent intended that plaintiff receive all his assets, except one life insurance policy that was to go to Allen, and that decedent did not want any of his assets to go to Steven, the late Michael, or Michael's family.

Based on our review of the record, we cannot say that an opposite conclusion is clearly apparent or that the trial court's findings are arbitrary, unreasonable, or not based on the evidence presented.

¶ 81 Notably, plaintiff testified that in 2014, following several significant life events, she and decedent entered into an oral agreement. Pursuant to the agreement, she and decedent agreed to leave their assets to the other if one predeceased the other. As part of the agreement, plaintiff agreed to help decedent with the business (Leading Edge) and a related non-profit entity (Warbirds). In addition, plaintiff agreed to help decedent care and advocate for his parents. Plaintiff also agreed to change the designations on her life insurance policies and investment accounts to name decedent as the beneficiary.

¶ 82 Plaintiff's testimony that she and decedent each agreed to leave their assets to the other was corroborated by other witnesses. Heath, a friend of decedent, testified that decedent told him that he had a will and that he wanted plaintiff "to have everything that he owned." Schweitzer, plaintiff's uncle's wife, testified that after decedent and plaintiff had a bad flying experience, they said that "basically" they were leaving each other everything, that decedent did not want his brothers to get anything, and that decedent wanted to leave Allen an insurance policy. For his part, Allen admitted that he did not know for certain whether decedent did or did not enter into an agreement with plaintiff. Plaintiff's testimony that she and decedent made an agreement to leave their assets to the other was also corroborated by the will documents themselves. These documents show that plaintiff intended to give certain assets to decedent and decedent intended to give certain assets to plaintiff.

¶ 83 Defendants attempt to introduce uncertainty about the agreement by relying on the beneficiary designations for the Edward Jones accounts referenced in decedent's will and certain forms. Decedent's will identifies Warbirds as the beneficiary of the Edward Jones accounts while

the beneficiary-designation forms for the Edward Jones accounts name Allen and Palma as the beneficiaries. Based on this, defendants contend that the evidence is inconsistent with the existence of an agreement. We disagree that these discrepancies render the trial court's ruling that plaintiff established an oral contract for a will was against the manifest weight of the evidence.

¶ 84    Defendants' position ignores other evidence presented at trial. For instance, decedent's will contains a section labeled "Schedule-Beneficiary Designations," in which decedent lists the assets he intended to give to plaintiff. This schedule assigns to plaintiff the home where the couple resided, "all household items and personal property in all locations," and six titled vehicles. Additionally, this schedule assigns to plaintiff "100%" of "Leading Edge Flight Services, Inc. and the wholly owned subsidiary, Warbirds of North America, Inc., and all assets therein including the *** hangar located in Huntley, IL, the 1957 North American T-28C components, 1974 Cessna 310Q, and 1981 Piper Warrior." Further, several witnesses provided testimonial evidence of plaintiff's performance of her alleged obligations under the parties' agreement. The trial court could have reasonably concluded, based on the provisions of decedent's will in conjunction with the trial testimony, the terms of plaintiff's almost identical "temporary will," and plaintiff's substantial performance of her obligations, that the evidence was sufficiently definite and certain to establish an enforceable contract. Such an interpretation is particularly reasonable given the unrebutted testimony from plaintiff, Heath, and Schweitzer that decedent wanted to give plaintiff all his assets.

¶ 85    Indeed, where there is evidence of a will, equity does not require for the will to be entirely consistent with the agreement. *Weidler v. Seibert*, 405 Ill. 477, 482 (1950) ("[W]here a promisor makes a will disposing of property involved in a manner other than promised, it will be considered but does not prevent enforcement of the contract."). If the oral contract is sufficiently specific and

it is fully performed, it will be enforced. *Weidler*, 405 Ill. at 481 (holding that evidence was sufficient to specifically enforce oral contract to give the plaintiff a house in exchange for services, even though the actual will only gave the plaintiff household furniture and the use of the house for one year, where the plaintiff, *inter alia*, made a "life arrangement" to care for the decedent and provided services for the decedent's benefit); see also *Jatcko*, 7 Ill. 2d at 486-87 (holding that there was sufficient evidence to infer the decedent made a valid contract to give property to the defendant, even though the property was devised outright to the defendant in original will but not subsequent will).

¶ 86    The cases defendants principally rely on are distinguishable. Defendants cite to *Nelson*, 103 Ill. App. 3d 640. In that case, the plaintiff testified that the decedent said to her "if you take care of everything for me, then \*\*\* I want you to have whatever is left after that time, so that I'll know everything is being taken care of." The plaintiff claimed that she agreed to "take care of all [the decedent's] needs," and that the decedent responded, "I want you to have the building and I will leave you whatever is left over." Based on these statements, the plaintiff brought an action for specific performance of an oral agreement to make a will. The trial court granted the motion of the decedent's estate for summary judgment in its favor. In affirming the grant of summary judgment, the reviewing court found it "fairly clear" that the decedent intended to bequeath something to the plaintiff and that the plaintiff was willing to care for the decedent, but it found that the terms of the alleged contract were "extremely vague" such that the evidence in support of the alleged contract fell "far short of being 'clear, explicit and convincing.' " *Nelson*, 103 Ill. App. 3d at 642. The court added that it could not ignore the terms of an unexecuted will and the affidavit of the decedent's attorney, both of which indicated that the decedent intended to sell the building at issue. *Nelson*, 103 Ill. App. 3d at 641.

¶ 87    Unlike the agreement in *Nelson*, the agreement at issue here was not "extremely vague." Plaintiff did not just agree generally to "take care of everything." Rather, plaintiff's unrebutted testimony established that she agreed to manage decedent's business and related non-profit entity, help care and advocate for his parents, and name decedent as the beneficiary on insurance policies and financial accounts. Also unlike in *Nelson*, decedent's will in this case supports that decedent intended to give his assets, directly or indirectly, to plaintiff.

¶ 88    Defendants also direct us to *Spaulding*, 187 Ill. App. 3d 1031. In that case, the plaintiff sought specific performance of an alleged will contract based on the love and affection between her and the decedent and the many chores she performed during their relationship. However, the court held that the decedent's statements to plaintiff and others that he would make a will in her favor were merely statements of testamentary intent that were insufficient to prove the existence of a contract. *Spaulding*, 187 Ill. App. 3d at 1036. The court further found the absence of clear and convincing evidence that the household chores, expenses, or the love and affection provided by the plaintiff were in exchange for the decedent's purported promise to make a will rather than being the result of ordinary "male-female affinity." *Spaulding*, 187 Ill. App. 3d at 1037. In the present case, unlike *Spaulding*, plaintiff did not rely upon "mere statements of testamentary intent." Plaintiff's unrebutted testimony at trial set forth the terms of the agreement, where plaintiff agreed to perform specific obligations for decedent. Other witnesses testified that plaintiff performed these specific obligations. Moreover, these obligations clearly went beyond "ordinary 'male-female affinity.' "

¶ 89    Defendants also contend that plaintiff did not establish substantial reliance on the agreement, describing certain services plaintiff performed as "done gratuitously without an expectation of payment" because she and decedent lived together as a couple. However, we agree

with plaintiff that the trial court could reasonably conclude that she performed the obligations for decedent based on her reliance on the oral contract to make a will, which he benefitted from. Notably, plaintiff handled the managerial operations of the business without compensation. Because of plaintiff, decedent was able to focus on the consulting aspect of the business. The trial court found that decedent "amassed his assets" from the business. The trial court could reasonably conclude that plaintiff's performance of these obligations enabled decedent to travel, grow the business, and accumulate wealth.

¶ 90    Moreover, because decedent travelled for work during the week, he was unable to care for his parents alone. Plaintiff took care of decedent's parents in his absence, which provided decedent with relief. After Palma moved to a memory-care facility, plaintiff would regularly visit her and advocate for her. Plaintiff also ensured that Allen got to his medical appointments. In addition, almost every day of the week, plaintiff delivered meals to Allen. While plaintiff was caring for decedent's parents, she lost time with her own mother, who passed away in 2017. Plaintiff also put her own ambitions on hold. Plaintiff and decedent remained in Illinois for his parents. Plaintiff withdrew her application for a position at Microsoft that would have allowed her and decedent to move to Texas, increase her salary, and advance her career. Further, based on the oral contract to make a will, plaintiff changed her beneficiary designations to name decedent as the beneficiary of her life insurance policies and her investment accounts. Considering this record, we reject defendants' contention that plaintiff's performance of these services was "done gratuitously."

¶ 91    In short, as the appellant, it was defendants' burden to establish that the trial court's judgment was against the manifest weight of the evidence. Based on the totality of the evidence in the record before us, we find that there was more than sufficient evidence supporting the existence of an oral contract to make a will. The testimony and evidence were sufficient to establish the

existence, terms, and intent of the agreement, whereby plaintiff and decedent agreed to leave their assets to each other if one predeceased the other. The testimony and evidence were sufficient to establish that plaintiff substantially, and to her detriment before decedent's death, relied on the agreement. The trial court weighed and deemed the testimony and evidence credible. The trial court's judgment on count I in plaintiff's favor was not against the manifest weight of the evidence.

¶ 92                                    2. Count II—Unjust Enrichment

¶ 93    Defendants also contend that the trial court's entry of judgment in favor of plaintiff on count II of her declaratory judgment action was against the manifest weight of the evidence and should be reversed. Defendants make no developed argument on this point. They simply assert that plaintiff's unjust enrichment claim was "entirely dependent" on her establishing her contract-for-will claim as an independent basis to establish a duty on the part of defendants to not accept property bequeathed to them either by decedent's beneficiary designations or pursuant to the orderly operation of the descent and distribution provisions of section 2-1 of the Probate Act (755 ILCS 5/2-1 (West 2020)). They then posit that "[p]laintiff failed to do that here," so the trial court's judgment on the unjust enrichment count was against the manifest weight of the evidence. However, having rejected defendants' claim that the trial court's ruling on count I, the contract-for-will claim, was against the manifest weight of the evidence, we decline to find that the trial court's judgment in plaintiff's favor on count II was against the manifest weight of the evidence.

¶ 94                C. Affirmative Defenses and Corresponding Counterclaims

¶ 95    Finally, defendants contend that the trial court erred in striking their affirmative defenses and dismissing Allen's counterclaim pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)).

¶ 96 A motion brought under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) is used to attack defects in a pleading. *In re County Treasurer and ex officio County Collector of Cook County*, 2023 IL App (1st) 220070, ¶ 22. "An 'affirmative defense' is one in which the defendant gives color to his opponent's claim but asserts new matter which defeats an apparent right in the plaintiff." *Raprager v. Allstate Insurance Co.*, 183 Ill. App. 3d 847, 854 (1989). An affirmative defense must allege facts with the same degree of specificity required to establish a cause of action. *JPMorgan Chase Bank, N.A. v. East-West Logistics, LLC*, 2014 IL App (1st) 121111, ¶ 31. A section 2-615 motion to strike an affirmative defense admits all well-pleaded facts constituting the defenses and attacks only the legal sufficiency of the pleading based on defects apparent on its face. *Hartman Realtors v. Biffar*, 2014 IL App (5th) 130543, ¶ 20; *Jordan v. Knafel*, 355 Ill. App. 3d 534, 539 (2005). When determining the sufficiency of the pleading, a court will disregard any conclusions of fact or law that are not supported by allegations of specific fact. *Richco Plastic Co. v. IMS Co.*, 288 Ill. App. 3d 782, 784-85 (1997). However, an affirmative defense should not be stricken where well-pleaded facts raise the possibility that the party asserting the defense will prevail. *In re County Treasurer*, 2023 IL App (1st) 220070, ¶ 22. We review *de novo* a trial court order striking an affirmative defense as inadequate as a matter of law. *Bogner v. Villiger*, 343 Ill. App. 3d 264, 268 (2003).

¶ 97 A "counterclaim" is "[a] claim for relief asserted against an opposing party after an original claim has been made." Black's Law Dictionary (12th ed. 2024). Like a section 2-615 motion to strike an affirmative defense, a section 2-615 motion to dismiss a counterclaim challenges the legal sufficiency of the pleading based on defects apparent on its face. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54; *Rico Industries, Inc. v. TLC Group, Inc.*, 2018 IL App (1st) 172279, ¶ 62. The essential question is whether the allegations of the counterclaim, when construed in the light most

favorable to the counterclaimant, are sufficient to establish a cause of action upon which relief may be granted. See *Cochran v. Securitas Services USA, Inc.*, 2017 IL 121200, ¶ 11. In making this determination, all well-pleaded facts in the counterclaim and all reasonable inferences drawn from those facts are taken as true. *Zahl v. Krupa*, 365 Ill. App. 3d 653, 657-58 (2006). A motion to dismiss should not be granted unless it clearly appears that no set of facts could ever be proved that would entitle the counterclaimant to recover. *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 280 (1982). Dismissals under section 2-615 are subject to *de novo* review. *Bonhomme v. St. James*, 2012 IL 112393, ¶ 34; *Bayview Loan Processing, LLC v. Szpara*, 2015 IL App (2d) 140331, ¶ 17; *RBS Citizens, N.A. v. RTG-Oak Lawn, LLC*, 407 Ill. App. 3d 183, 186 (2011).

¶ 98            1. First Affirmative Defense and Corresponding Counterclaim

¶ 99    Defendants' first affirmative defense alleged that decedent's will is valid, but any beneficial interest plaintiff has under decedent's will is void pursuant to section 4-6(a) of the Probate Code (755 ILCS 5/4-6(a) (West 2020)) because plaintiff attested to its execution. Allen's counterclaim sought a declaration to the same effect. On appeal, defendants, reiterating the claims made in their first affirmative defense, contend that it was reversible error for the trial court to strike their first affirmative defense and dismiss Allen's corresponding counterclaim.

¶ 100   Plaintiff responds that even if all well-pleaded facts are accepted as true, defendants' first affirmative defense and the corresponding counterclaim were legally insufficient to defeat her right to recovery based on her claim for breach of a contract to make a will, trust, or other contractual instrument. As such, plaintiff argues that the trial court appropriately struck defendants' first affirmative defense and dismissed the corresponding counterclaim.

¶ 101   We agree with plaintiff that the trial court properly struck defendants' first affirmative defense and dismissed the corresponding counterclaim. Defendants' first affirmative defense and

the corresponding counterclaim rely on section 4-6(a) of the Probate Act (755 ILCS 5/4-6(a) (West 2020)) and its Tennessee counterpart (see Tenn. Code Ann. § 32-1-103(b) (2020)).[3] These statutes provide that any beneficial interest of a beneficiary who attests to the execution of the will is void as to that beneficiary, unless the will is otherwise duly attested by a sufficient number of persons exclusive of that person, but that person is entitled to receive the interest to which they would be entitled as though there were not a will. 755 ILCS 5/4-6(a) (West 2020) ("If any beneficial legacy or interest is given in a will to a person attesting its execution ***, the legacy or interest is void as to that beneficiary and all persons claiming under him, unless the will is otherwise duly attested by a sufficient number of witnesses *** exclusive of that person ***, but the beneficiary is entitled to receive so much of the legacy or interest given to him by the will as does not exceed the value of the share of the testator's estate to which he would be entitled were the will not established."); Tenn. Code Ann. § 32-1-103(b) (2020) ("No will is invalidated because attested by an interested witness, but any interested witness shall, unless the will is also attested by two (2) disinterested witnesses, forfeit so much of the provisions therein made for the interested witness as in the aggregate exceeds in value, as of the date of the testator's death, what the interested witness would have received had the testator died intestate."). Importantly, these provisions do not defeat the right of plaintiff to recover based on the claims asserted in her amended complaint, *i.e.*, breach of a contract to make a will, trust, or other contractual instrument (count I) and the imposition of a constructive trust on all probate and non-probate assets under a theory of unjust enrichment (count II). That is, even if section 4-6(a) applied here, it would merely void any claim plaintiff may have asserted as a legatee under decedent's will. However, plaintiff made no claim as a legatee under decedent's will in her amended complaint. Rather, she alleges that decedent breached an oral

---

[3]Recall that decedent's will was executed in Tennessee.

contract to make a will and sought the imposition of a constructive trust. Section 4-6(a) of the Probate Act cannot defeat plaintiff's right to recover for a claim against decedent's estate that is not based on decedent's will itself. Accordingly, we conclude that defendant's first affirmative defense is inapplicable and the trial court properly struck it.

¶ 102 Similarly, we conclude that the trial court properly dismissed the counterclaim corresponding to defendant's first affirmative defense. Even accepting all well-pleaded facts in the counterclaim and all reasonable inferences drawn from those facts as true, defendants do not clearly explain how the allegations of the counterclaim, when construed in the light most favorable to defendants, are sufficient to establish a cause of action upon which relief may be granted. In their reply brief, defendants argue that if plaintiff were unable to prove her case in light of evidence of a valid will, a successful counterclaim would result in plaintiff taking under the will what she would take if decedent had died intestate—nothing. See 755 ILCS 5/2-1, 4-6(a) (West 2020). But the same is true if plaintiff were unable to prove her case in light of evidence of an *invalid* will. That is because plaintiff is not an heir at law and thus would not take anything under the statute of descent and distribution. See 755 ILCS 5/2-1 (West 2020). In other words, defendants have not presented any evidence to refute the proposition that the motion to dismiss was improvidently granted on the basis that there are a set of facts that would entitle them to recover. See *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 280 (1982).

¶ 103          2. Second Affirmative Defense and Corresponding Counterclaim

¶ 104 Relying on the Third Party Beneficiary Contract Act (755 ILCS 30/1 *et* seq. (West 2020)), defendants' second affirmative defense alleged that the Edward Jones accounts are not probate assets because they are subject to a beneficiary designation identifying Allen as a transfer-on-death beneficiary. The counterclaim requested declaratory relief to that effect. On appeal, defendants,

reiterating the claims made in their second affirmative defense and corresponding counterclaim, contend that it was reversible error for the trial court to strike their second affirmative defense and dismiss Allen's corresponding counterclaim.

¶ 105   Plaintiff responds that the trial court appropriately struck defendants' second affirmative defense and dismissed the corresponding counterclaim because, even if all well-pleaded facts are accepted as true, the second affirmative defense and the corresponding counterclaim were legally insufficient to defeat her right to recovery based on her claim for unjust enrichment.

¶ 106   Defendants rely on the Third Party Beneficiary Contract Act. That statute provides in relevant part as follows:

> "The designation *** under a pension, retirement, death benefit, deferred compensation, employment, agency, stock bonus or profit-sharing contract, plan, system or trust, or the designation under an account with a securities dealer as defined in Section 2.7 of the Illinois Securities Law of 1953, as now or hereafter amended, of any person to be a beneficiary, payee or owner of any right, title or interest thereunder upon the death of another, or any assignment of rights under any of the foregoing, *shall not be subject to or defeated or impaired by any statute or rule of law governing the transfer of property by will, gift or intestacy*, even though such designation or assignment is revocable or the rights of such beneficiary, payee, or owner or assignee are otherwise subject to defeasance." (Emphasis added.) 755 ILCS 30/1 (West 2020).

In this case, it is not seriously disputed that decedent had completed a designation identifying Allen as the sole surviving transfer-on-death beneficiary of the Edward Jones accounts. Defendants therefore argue that the Third Party Beneficiary Contract Act precludes plaintiff from asserting that Allen's designation as the transfer-on-death beneficiary is defeated by her oral-contract-for-

a-will and unjust-enrichment claims. In support of their position, defendants direct us to *In re Estate of Bedinger*, 2025 IL App (5th) 240566-U.[4]

¶ 107    In *Bedinger*, the testator left a will which listed his wife and three children as heirs. The will directed that the testator's 401(k) retirement account be distributed between his wife and children, with the majority of the 401(k) to be distributed to the children. The executor filed a petition for citation to discover assets and recover property, which alleged, *inter alia*, that the will divided the 401(k) account, but the wife had applied for and received a transfer of ownership of the account in her name alone as surviving spouse. The wife moved to dismiss, arguing, among other things, that she was the lawful beneficiary of the 401(k) account pursuant to surviving spouse provisions of federal law and therefore had no legal duty to turn over the proceeds to the estate. In response to the motion, the executor claimed unjust enrichment, arguing, *inter alia*, that the will itself directed that the testator's 401(k) account be distributed between his wife and children. Further pleadings followed, which included arguments based on the Employee Retirement and Income Security Act of 1974 (ERISA) (codified in part at 29 U.S.C. § 18 (2020)) and the Third Party Beneficiary Contract Act (755 ILCS 30/0.01 *et seq.* (West 2020)). The trial court ultimately ruled in the wife's favor. The executor appealed.

¶ 108    On appeal, the reviewing court, in affirming, considered the application of the Third Party Beneficiary Contract Act based on the facts presented. *Bedinger*, 2025 IL App (5th) 240566-U, ¶¶ 42-45. The court held that the executor's claim for unjust enrichment was "specifically

---

[4]We note that unpublished orders issued under Illinois Supreme Court Rule 23(b) (eff. Jan. 1, 2021), are "not precedential except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case," but nonprecedential orders issued on or after January 1, 2021, may be cited for persuasive purposes. See Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021).

precluded" by the statute, as the unjust enrichment claim was premised on the will itself. *Bedinger*, 2025 IL App (5th) 240566-U, ¶ 45 ("[T]he executor attempts to circumvent the distribution of the 401(k) proceeds by use of [the decedent's] will pursuant to a claim of unjust enrichment. However, such action is specifically precluded in section 1 [of the Third Party Beneficiary Contract Act].").
In reaching this conclusion, the reviewing court distinguished *In re Estate of Beckhart*, 371 Ill. App. 3d 1165 (2007).

¶ 109   In *Beckhart*, 371 Ill. App. 3d 1165, a father and a mother entered into a settlement agreement pursuant to which they both agreed to name their son as the beneficiary of any life insurance policies. The father had previously named his estate as the beneficiary of his life insurance policy and never changed the beneficiary to accord with the settlement agreement. The father died intestate. The mother filed a claim on behalf of her son for the proceeds of the policy. However, the insurance company paid the proceeds of the policy to the father's estate, not to the son. The mother then filed a motion to establish a constructive trust. In response, the father's estate asserted the affirmative defense of laches, alleging that the motion for constructive trust was not filed until one year after the insurance policy proceeds had been distributed, and the delay prejudiced the estate because the proceeds had been used for estate expenses. The trial court agreed with the position of the father's estate and denied the motion for a constructive trust. The mother appealed.

¶ 110   On appeal, the reviewing court stated that, in assessing whether the trial court had erred in denying the mother's motion for a constructive trust, it had to first determine who was entitled to the proceeds of the father's life insurance policy. In addressing that issue, the court considered the application of the Third Party Beneficiary Contract Act. *Beckhart*, 371 Ill. App. 3d at 1168-1170. The court held that the son, not the father's estate, was entitled to the proceeds of the insurance

policy. *Beckhart*, 371 Ill. App. 3d at 1168-1170. In reaching this conclusion, the court noted that a settlement agreement that requires a parent to name a child as the beneficiary of a policy "vests the child with an equitable right that can be enforced." *Beckhart*, 371 Ill. App. 3d at 1169. Thus, the son obtained a "vested, contingent right to [the life insurance] benefits when the settlement agreement was entered and the judgment became final." *Beckhart*, 371 Ill. App. 3d at 1168-1169. The court added that "[i]f the insured fails to name his child as the beneficiary, equity mandates that courts treat the policy as if the child had been named as the beneficiary." *Beckhart*, 371 Ill. App. 3d at 1169. The court stated that, as a remedy, "imposing a constructive trust requires any other party who receives the insurance proceeds, but who has an inferior equitable right to them, to hold the proceeds for the vested beneficiary." *Beckhart*, 371 Ill. App. 3d at 1169.

¶ 111   As noted, defendants liken this case to *Bedinger* and distinguish *Beckhart*. Defendants explain that *Bedinger* holds that a subsequent will does not defeat a beneficiary designation on a 401(k) account where there was no earlier "vesting" of the 401(k) proceeds, as was the case in *Beckhart*. See *Bedinger*, 2025 IL App (5th) 240566-U, ¶¶ 44-45. Further, in discussing and distinguishing *Beckhart*, the *Bedinger* court's focus was on the superior, vested right of the minor arising from the marital settlement agreement in the prior divorce proceeding, which was absent in the case before it. *Bedinger*, 2025 IL App (5th) 240566-U, ¶¶ 44-45. Synthesizing these cases, defendants argue that, absent a prior vested right, a beneficiary designation made pursuant to the Third Party Beneficiary Contract Act trumps a contrary transfer of property by will, gift, or intestacy. As such, defendants argue that the beneficiary designation on the Edward Jones accounts in this case trumps plaintiff's claim that she was entitled to these assets based on a purported oral contract for a will, which had not been reduced to judgment. Thus, even if their second affirmative defense based on the Third Party Beneficiary Contract Act did not defeat her claim for all of

decedent's assets, the trial court erred in striking defendants' counterclaim seeking a declaration that the proceeds of the Edward Jones accounts were rightfully Allen's.

¶ 112   Plaintiff counters that the Third Party Beneficiary Contract Act is inapplicable to an equitable claim like unjust enrichment when the claim, like hers here, is not premised on "any statute or rule of law governing the transfer of property by will, gift, or intestacy." See 755 ILCS 30/1 (West 2020). Plaintiff asserts that *Bedinger* is distinguishable because the unjust enrichment claim in that case was based on the will itself and therefore governed by the probate statutes. Plaintiff analogizes this case to *Beckhart*. She contends that, like *Beckhart*, her equitable claim for unjust enrichment is largely premised on a contractual obligation to make a will that vests her "with an equitable right that can be enforced." Plaintiff reasons that when she and decedent entered into an agreement to transfer his estate to her if he predeceased her, she was vested with an equitable right to the Edward Jones accounts as if she had been named as the death beneficiary on those accounts. However, because of decedent's untimely death, he did not change the beneficiary designation for the Edward Jones accounts to plaintiff per their agreement. Plaintiff asserts that equity gives her the remedy of a constructive trust to prevent unjust enrichment. Further, such an equitable claim, as *Beckhart* supports, is not precluded by the Third Party Beneficiary Contract Act, which is inapplicable under the circumstances of this case.

¶ 113   We agree with defendants that the trial court erred in striking their second affirmative defense and dismissing Allen's corresponding counterclaim based on the Third Party Beneficiary Contract Act. At the outset, we find that *Beckhart* is distinguishable from the present case. In *Beckhart*, the son obtained a vested, contingent right to an asset—the proceeds of a life insurance policy—when the settlement agreement entered and the judgment became final. In other words, *Beckhart* is distinguishable as that case involved a vested right immortalized by a court-sanctioned

settlement agreement. The same situation is not present here, where the parties merely bargained for a mere expectancy. Other than *Beckhart*, plaintiff cites no applicable case law in support of her position.

¶ 114   Moreover, we reject plaintiff's argument that the Third Party Beneficiary Contract Act is inapplicable here. Plaintiff's position that her complaint is based on a contractual obligation not premised on "any statute or rule of law governing the transfer of property by will, gift, or intestacy" is conclusory, unsupported by any direct or analogous authority. Thus, it is forfeited. Ill. S. Ct. R. 341(h)(7), (i) (eff. Oct. 1, 2020) (noting that points not argued are forfeited).

¶ 115   Forfeiture aside, plaintiff's position is easily refuted. A "rule of law" is simply "[a] substantive legal principle." Black's Law Dictionary (12th ed. 2024). Both counts of plaintiff's complaint advance substantive legal principles. Count I of plaintiff's complaint sought a declaration that decedent breached an oral contract to make a will and that she was entitled to all probate and non-probate assets in decedent's estate. Count II of plaintiff's complaint sought the imposition of a constructive trusts on all probate and non-probate assets under a theory of unjust enrichment. As is clear from an examination of plaintiff's claims, she clearly seeks to defeat the designation of Allen as the transfer-on-death beneficiary of the Edward Jones accounts by a "rule of law. However, if defendants' second affirmative defense and corresponding counterclaim are successful and the Third Party Beneficiary Contract Act supersedes plaintiff's alleged oral contract to make a will, it will defeat plaintiff's claim that decedent breached the oral contract to make a will and that Allen was unjustly enriched as the designated beneficiary of the Edward Jones accounts. Further, we disagree with plaintiff's suggestion that her claims are premised merely on a contractual obligation. Plaintiff's view of her claim ignores that the subject of the oral contract is a *will*. Accepting plaintiff's position would mean that a party could easily circumvent the Third

Party Beneficiary Contract Act by alleging the existence of an oral contract for a will. See *In re Estate of Schwendeman*, 112 Ill. App. 2d 273, 276-77 (1969) (noting that if was the intent of the legislature in enacting the payable-on-death provision of the Illinois Savings and Loan Act " 'to validate the specific testamentary disposition of funds in a "P.O.D. account" even though the form of such disposition is not in accordance with the requirements of testamentary dispositions in general as set forth in the Statute of Wills' " (quoting *In re Estate of Gubala*, 81 Ill. App. 2d 378, 383 (1967))).[5] As such, we conclude that the Third Party Beneficiary Act is a proper affirmative defense and counterclaim and that the trial court erred in striking defendants' second affirmative defense and dismissing Allen's corresponding counterclaim.

¶ 116   We also reject plaintiff's suggestion that the Third Party Beneficiary Contract Act excepts equitable claims from "the rule of law" as suggested by plaintiff. As our supreme court has noted, equity follows the law, and the legislature is empowered to limit the availability of equitable remedies. *In re Liquidation of Security Casualty Co.*, 127 Ill. 2d 434, 447-48 (1989) (holding that equitable relief, such as a constructive trust, was precluded where the Insurance Code provided the exclusive scheme for determining priorities in the distribution of liquidated insurance company assets).

¶ 117   In short, we conclude that the trial court erred in striking defendants' second affirmative defense and dismissing the corresponding counterclaim that relied on the Third Party Beneficiary Contract Act. We therefore reverse that portion of the trial court's May 22, 2023, order striking

---

[5]Indeed, we observe that the Edward Jones website cautions investors to regularly review their beneficiaries lest their assets be inherited by someone the investor no longer intends. See https://www.edwardjones.com/us-en/market-news-insights/personal-finance/planning-your-estate/beneficiaries (last visited January 23, 2026).

defendants' second affirmative and dismissing the corresponding counterclaim. We remand the matter to the trial court to allow defendants to present their second affirmative defense and corresponding counterclaim based on the Third Party Beneficiary Contract Act.

¶ 118                                 IV. CONCLUSION

¶ 119   For the reasons set forth above, we affirm the trial court's finding that plaintiff proved by clear and convincing evidence the existence of an oral contract to make a will. We also affirm that portion of the trial court's order imposing a constructive trust in plaintiff's favor of the probate assets in decedent's estate. However, we also find that the trial court erred in striking defendants' second affirmative defense and dismissing Allen's corresponding counterclaim based on the Third Party Beneficiary Contract Act. Accordingly, we reverse that portion of the trial court order imposing a constructive trust in plaintiff's favor of the assets previously held in the Edward Jones accounts. Further, we remand the matter to the trial court to allow defendants to present their second affirmative defense and corresponding counterclaim in light of our decision in this appeal.

¶ 120   Affirmed in part, reversed in part; cause remanded with directions.